UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEFFERIES LLC,<br><br> Plaintiff,<br><br>v.<br><br>WTW INVESTMENT COMPANY, LTD., PAULA TURNBULL KNOX, as trustee of Turnbull Marital Trust, WILLIAM STANTON, JANET STANTON, JEFFREY DWORKIN, ROBERT ANDERSON, ALEJANDRO CABRERA, JOHN GONZALEZ, KENNETH BARNETT, MARK A. HADJA, BROOKS BARKLEY, SARAH BARKLEY, ANDREW WILLIAMS, RICHARD HOEDEBECK, SALLY HOEDEBECK, BETH ERWIN, BRIAN BECK, STEVEN RIEBEL, as trustee of Riebel Living Trust, JENNIE D. PRICE, RENOUARD INVESTMENTS, LLC, PAUL THOMPSON, DAVID N. PEDERSON, TODD R. BROWN, JEFFREY MILLER, MICHAEL SULLIVAN, LORI BOWEN, PHYLLIS K. CLARK, RICHARD LONGORIA, MARK E. TRIVETTE, TARAK PATEL, MAROON FEGHALI, JOSEPH N. FEGHALI, ELIE N. FEGHALI, ROBERT S. TYLER, DONNELLA R. TYLER, THOMAS G. KEYSER, CONSTANCE LINDSEY, and RUSTY McDOWELL,<br><br> Defendants. | CIVIL ACTION _____ |

**JEFFERIES LLC'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

i

# **TABLE OF CONTENTS**

PAGE

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. BACKGROUND ................................................................................................................... 2

    A. The Court May Resolve The Issue of Whether The Parties Agreed to Arbitrate .................................................................................................... 4

    B. Jefferies is Entitled to a Preliminary Injunction Barring Defendants from Pursuing the Arbitration Against It .................................. 5

        1. Jefferies Is Likely to Prevail on the Merits. ........................................ 5

            i. Jefferies Has Not Consented to Arbitrate with Defendants Because it Does Not Have A Written Agreement to Arbitrate with Defendants. .................................. 5

            ii. Defendants Are Not "Customers" of Jefferies............................. 6

        2. Jefferies Will Suffer Irreparable Harm if Defendants Are Not Enjoined ................................................................................................. 9

        3. The Balance of Equities Weighs in Favor of Jefferies ....................... 10

        4. An Injunction Is in the Public Interest ............................................... 12

III. CONCLUSION ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) .................................................................................................. 4, 5

*CDM Smith Inc. v. Inst. for Bldg. Tech. & Safety, Inc.*,
 No. 4:15–CV–3069, 2015 WL 6760410 (S.D. Tex. Nov. 5, 2015) ................................... 4

*Charles Schwab & Co. v. Reaves*,
 No. CV-09-2590-PHX-MHM, 2010 WL 447370 (D. Ariz. Feb. 4, 2010) 4)…………...11

*Citigroup Global Markets, Inc. v. Abbar*,
 761 F.3d 268 (2d Cir. 2014) ....................................................................................... 7, 9

*Credit Suisse Sec. (USA) LLC v. Sims*,
 No. H–13–1260, 2013 WL 5530827 (S.D. Tex. Oct. 4, 2013) ............................... 8, 9, 12

*DK Joint Venture 1 v. Weyand*,
 649 F.3d 310 (5th Cir. 2011) ........................................................................................... 4

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*,
 264 F.3d 770 (8th Cir. 2001) ........................................................................................... 8

*Goldman, Sachs & Co. v. City of Reno*,
 747 F.3d 733 (9th Cir. 2014) ........................................................................................... 8

*Greerwalker, LLP v. Jackson*,
 No. 3:16-CV-235, 2016 WL 3770954 (W.D.N.C. July 14, 2016) .................................. 11

*Hyundai Merch. Marine Co. v. Conglobal Indus., LLC*,
 No. 3:15-CV-3576-G, 2016 WL 695649 (N.D. Tex. Feb. 22, 2016) ............................... 5

*Kellogg Brown & Root Servs., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*,
 No. H-07-2684, 2007 WL 4190795 (S.D. Tex. Nov. 21, 2007) ............................... 10, 11

*Koman v. Weingarten/Investments, Inc.*,
 No. H–10–1836, 2010 WL 3717312 (S.D. Tex. Sept. 17, 2010) ................................... 10

*McLaughlin Gormley King Co. v. Terminix International Co., L.P.*,
 105 F.3d 1192 (8th Cir. 1997) ....................................................................................... 11

*Morgan Keegan & Co. v. Jindra*,
 No. C11–5704BHS, 2011 WL 5869586 (W.D. Wash. Nov. 22, 2011) ........................... 6

*Morgan Keegan & Co. v. Louise Silverman Trust*,
   No. JFM–11–2533, 2012 WL 113400 (D. Md. Jan. 12, 2012) ....................................... 10

*Morgan Keegan & Co. v. McPoland*,
   829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011)………………………….....……11, 12

*Morgan Keegan & Co. v. Shadburn*,
   829 F. Supp.2d 1141 (M.D. Ala. 2011) ...................................................................... 12

*Morgan Keegan & Co. v. Shorthouse*,
   No. C11–5734BHS, 2011 WL 7790893 (W.D. Wash. Nov. 22, 2011) ........................... 11

*Morgan Keegan & Co. v. Silverman*,
   706 F.3d 562 (4th Cir. 2013) ................................................................................ 6, 10

*Pershing LLC v. Bevis*,
   No. 13–672–JJB–RLB, 2014 WL 1818098 (M.D. La. May 7, 2014). ............................... 9

*Raymond James Fin. Servs., Inc. v. Cary*,
   709 F.3d 382 (4th Cir. 2013) ......................................................................................... 5

*Sykes v. Escueta*,
   No. 10–3858 SC, 2010 WL 4942608 (N.D. Cal. Nov. 29, 2010) ................................... 12

*UBS Fin. Servs., Inc. v. Carilion Clinic*,
   706 F.3d 319 (4th Cir. 2013) ......................................................................................... 7

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
   489 U.S. 468 (1989).................................................................................................... 5

*Will–Drill Res., Inc. v. Samson Res. Co.*,
   352 F.3d 211 (5th Cir. 2003) ........................................................................................ 4

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)......................................................................................................... 4

*Zarecor v. Morgan Keegan & Co.*,
   No. 4:10CV01643 SWW, 2011 WL 5592861 (E.D. Ark., July 29, 2011) ....................... 11

<u>RULES</u>

FINRA Rule 12100. ........................................................................................................ 7

FINRA Rule 12200. ................................................................................................... 2, 6

Plaintiff Jefferies LLC ("Plaintiff" or "Jefferies") respectfully submits this Brief in Support of Its Motion for a Preliminary Injunction (the "Motion") pursuant to Rule 65 of the Federal Rules of Civil Procedure, 9 U.S.C. § 4, and the Local Rules of this Court.

I.  **PRELIMINARY STATEMENT**

Defendants commenced an arbitration (the "Arbitration") before the Financial Industry Regulatory Authority ("FINRA"), improperly naming Jefferies as a respondent.[1] The underlying dispute relates to Defendants' alleged individual investments in Palmaz Scientific, Inc. ("Palmaz"), a now-defunct biotechnology company. According to the Statement of Claim that commenced the Arbitration, Defendants' investments did not perform as they had hoped and, as a consequence, Defendants suffered cumulative losses of approximately $3.2 million. App. at 2. Defendants allege that they purchased the Palmaz shares in reliance on private placement memoranda initially prepared by Jefferies, but revised and distributed to them by an entity called WFG Investments, Inc. ("WFG").[2] *Id*. No Defendant claims to have purchased its Palmaz shares from Jefferies or to have been solicited to invest in Palmaz by Jefferies. Nevertheless, Defendants assert, *inter alia*, that Jefferies' conduct with respect to Palmaz somehow violated various FINRA Rules as well as the Texas Securities Act. *Id*. at 16–22. The merits, or lack thereof, of Defendants' claims against Jefferies are immaterial to this Motion because, as explained below, they are not subject to binding arbitration and must be resolved—if at all—in a judicial forum.

Under FINRA's governing rules, a member firm may be compelled to arbitrate disputes with its "customer[s]" in one of two circumstances: first, where it is "required by a written agreement"; second, where it "[r]equested by the customer." *See* FINRA Code of

---

[1]  The Arbitration is captioned *Toby Wilson, Paula Turnbull Knox, William Stanton, Janet Stanton, et al. vs. WFG Investments, Inc. and Jefferies LLC*, FINRA Office of Dispute Resolution Arbitration No. 16-03688. A true and correct copy of the Statement of Claim, which initiated the Arbitration, is attached hereto as Exhibit 1. Appendix ("App.") at 1–205.

[2]  WFG is also named as a respondent in the Arbitration, but is not currently a party to this action.

Arbitration Procedure for Customer Disputes (the "FINRA Code") Rule 12200. Defendants have failed to cite **any** written agreement with Jefferies, including any agreement to arbitrate this dispute—because none exists. In any event, Defendants face a more fundamental problem—as is clear from their own Statement of Claim, they do not allege that they have ever been in a "customer" relationship with Jefferies. Jefferies' review of its books and records confirms that none of the Defendants is a customer of Jefferies, and that none of the Defendants purchased their Palmaz stock through Jefferies. *See* Exhibit 2, Declaration of Kaitlyn Kooyers dated February 1, 2017 ("Kooyers Dec.") (App. at 207) ¶¶ 3–4.

In sum, Defendants have no basis to compel Jefferies to arbitrate their claims. Moreover, as demonstrated below, Jefferies' forced participation in the Arbitration constitutes immediate and irreparable harm that can only be averted by the issuance of injunctive relief. The existence of an agreement to arbitrate is a question of law for this Court and ample precedent supports granting injunctive relief. Accordingly, Jefferies respectfully submits that the Court should grant the Motion and issue a preliminary injunction enjoining Defendants from pursuing the Arbitration against Jefferies.

## II.  BACKGROUND

On or about December 20, 2016, Defendants commenced the Arbitration by filing the Statement of Claim with FINRA. *See generally* App. at 1–205. By their account, Defendants are a "diverse group of investors" who each purchased preferred shares in Palmaz at various times before its eventual bankruptcy in March 2016. *Id*. at 2–3.

Jefferies is a global investment bank headquartered in New York. Exhibit 3, Declaration of Kevin Sheridan dated February 1, 2017 ("Sheridan Dec.") (App. at 209) ¶ 1. As alleged by Defendants, Jefferies' connection to this dispute stems from its role in preparing a private placement memorandum ("PPM") for use in a non-public offering of

Palmaz Series B convertible preferred stock between 2010 and 2013. App. at 7–9. Defendants allege that they each purchased Palmaz stock in reliance on the PPM. *Id*. at 9.

Although the Statement of Claim presents Jefferies as central player in the events surrounding the Arbitration, the record shows otherwise. Jefferies was engaged by Palmaz in 2010 to act as a placement agent in connection with the private placement of Series B convertible preferred stock (the "offering"). Sheridan Dec. (App. at 209) ¶ 3. In the course of its engagement, Jefferies drafted a PPM for the offering. *Id*. ¶ 4. Jefferies acted for Palmaz until late 2011, when Palmaz requested that it be released from the exclusivity provision in the engagement letter to permit Williams Financial Group ("WFG") to market the preferred stock and to act as a placement agent. *Id.* Jefferies agreed to this request. *Id.*

Jefferies never co-marketed the Palmaz preferred stock with WFG. *Id.* ¶ 5. At no point did Jefferies authorize WFG to act as its agent and/or representative in connection with any offering of Palmaz preferred stock. *Id.* To the extent that WFG represented itself to Defendants or other investors as Jefferies' authorized representative, it did so without Jefferies' knowledge or consent. *Id.* Further, to the extent that WFG distributed Jefferies' Palmaz PPM to its clients, it likewise did so without Jefferies' knowledge or consent. *Id.*

Defendants *do not* claim to have had any customer relationship with Jefferies—because they did not. They do not claim, for example, to have held accounts with Jefferies' wealth management division, or to have purchased their Palmaz preferred stock from Jefferies—because they did not. Kooyers Dec. (App. at 207) ¶¶ 3–4. In fact, according to the Statement of Claim, all Defendants purchased the relevant securities from WFG, with the exception of four defendants who purchased shares directly from the issuer. App. at 9. They do not claim that Jefferies solicited their investment in Palmaz or ever communicated with them regarding their investment in Palmaz—because it did not.

3

Further, Defendants do not allege in their Statement of Claim—nor can they—that they entered into **any** agreement with Jefferies, including an agreement to arbitrate. *See* Kooyers Dec. (App. at 207) ¶ 5.

### III. ARGUMENTS AND AUTHORITIES

Preliminary injunctions barring the pursuit of arbitration proceedings are available if the general requirements for injunctive relief are met. *CDM Smith Inc. v. Inst. for Bldg. Tech. & Safety, Inc.*, No. 4:15–CV–3069, 2015 WL 6760410, at *2 (S.D. Tex. Nov. 5, 2015). The movant must demonstrate (i) a likelihood of success on the merits, (ii) irreparable harm if the injunction is not granted, (iii) that the balance of equities favors the movant, and (iv) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 19–20 (2008). Because each of these criteria is satisfied here, Jefferies respectfully requests that the Court preliminarily enjoin Defendants from further proceedings against Jefferies in the Arbitration.

**A. The Court May Resolve the Issue of Whether the Parties Agreed to Arbitrate**

The only question before the Court concerns "whether the parties entered into any arbitration agreement in the first place." *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011). It is well-settled law that this is a dispute for the courts, and not the arbitrators to decide in the first instance. *Id*. *See also Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("[I]t is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration."). As the Supreme Court has admonished, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

4

648 (1986). As such, courts do not apply the "strong federal policy favoring arbitration when making the initial threshold determination about the *existence* of an agreement to arbitrate." *Hyundai Merch. Marine Co. v. Conglobal Indus., LLC*, No. 3:15-CV-3576-G, 2016 WL 695649, at *2 (N.D. Tex. Feb. 22, 2016) (emphasis added). Thus, the Court can determine whether the parties ever agreed to arbitrate without deference to the Arbitration commenced by Defendants.

**B. Jefferies is Entitled to a Preliminary Injunction Barring Defendants from Pursuing the Arbitration Against It**

    **1. Jefferies Is Likely to Prevail on the Merits.**

The essential dispute in this action is whether Jefferies can be compelled to arbitrate Defendants' claims in the pending Arbitration. Jefferies is likely to prevail on the merits of this dispute because the parties do not have an agreement to arbitrate Defendants' claims and Defendants are not, and never have been, customers of Jefferies.

        i. Jefferies Has Not Consented to Arbitrate with Defendants because it Does Not Have A Written Agreement to Arbitrate with Defendants.

It is black-letter law that arbitration is "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Compelling a party to arbitrate that "has not agreed to do so would be to engage in naked coercion independent of any sound basis in law" and "would undermine the longstanding principle that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of disputes." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 388 (4th Cir. 2013).

To determine whether the parties consented to arbitrate, courts must look to the asserted contractual basis for arbitral jurisdiction. This also applies to FINRA arbitrations. "FINRA is a non-governmental agency, and it has no specific grant of authority—from

5

Congress or some other form of governmental power—to conduct arbitration proceedings. As such, its authority to compel arbitration must have some contractual basis——either a contract between customer and FINRA member, or an agreement between the member and FINRA." *Morgan Keegan & Co. v. Jindra*, No. C11–5704BHS, 2011 WL 5869586, at *2 (W.D. Wash. Nov. 22, 2011).

There are two contractual sources of authority to compel a party to participate in a FINRA arbitration. The first arises where arbitration is "[r]equired by written agreement[.]" FINRA Rule 12200. Jefferies never entered into **any** written agreement to arbitrate with Defendants. Notably, Defendants' own Statement of Claim does not contain a single allegation regarding a written agreement to arbitrate. Therefore, Jefferies cannot be compelled to arbitrate under this source of authority.

Alternatively, "in the absence of a separate arbitration agreement" an entity can compel a FINRA member to arbitrate under FINRA Rule 12200 if "(1) the party is a 'customer' of the FINRA member; and (2) there is a dispute between the 'customer' and the FINRA member, or the member's associated person, arising in connection with the business activities of the FINRA member or a member's associated person." *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 564 (4th Cir. 2013). Jefferies cannot be compelled to arbitrate under this source of authority because, as demonstrated below, Defendants are not, and never have been, "customer[s]" of Jefferies.

    ii. <u>Defendants Are Not "Customers" of Jefferies.</u>

No "customer" relationship has ever existed between Defendants and Jefferies. Accordingly, Defendants have no standing to invoke the FINRA arbitration provisions against Jefferies.

6

The FINRA Code does not define the term "customer," except to state that a "customer shall not include a broker or dealer." FINRA Rule 12100(i). Federal courts across the country have interpreted this definition and supplied comprehensive definitions of the term. Defendants would not be considered "customers' of Jefferies under any of the federal courts' definitions of the term.

Arguably the most rigorous analysis of the definition of "customer" under the FINRA Code is contained in the Second Circuit's opinion in *Citigroup Global Markets, Inc. v. Abbar*, 761 F.3d 268 (2d Cir. 2014). The Court noted that "the word 'customer' must be construed in a manner consistent with the reasonable expectations of FINRA members." *Id*. at 274 (internal quotation marks omitted). To that end, the Court held that a "customer" under FINRA Rule 12200 is one who either (1) purchases a good or service from a FINRA member or (2) has an account with a FINRA member. *Id*. at 275. Under this definition, "[t]he only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and courts need not wonder whether myriad facts will 'coalesce into a functional concept of the customer relationship.'" *Id.* (citation omitted). Here, even on their own allegations, Defendants cannot meet the *Abbar* "customer" standard. As noted above, Defendants do not claim to have purchased any goods or services from Jefferies, or to have held any accounts with Jefferies.

In *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013), the Fourth Circuit concluded that "'customer,' as that term is used in the FINRA Rules, refers to one, not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are regulated by FINRA—namely investment banking and securities business activities." *Id*. at 327. The

7

Fourth Circuit's definition is no more helpful to Defendants, because—it bears repeating—they do not allege that they purchased anything from Jefferies.

In its evaluation of the "customer" definition, the Eighth Circuit explicitly rejected the argument that one may qualify as a customer simply by being neither a broker nor a dealer. *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001). Instead, when assessing the analogous arbitration rule of FINRA's predecessor entity, NASD, the Eighth Circuit narrowly defined customer to "refer[] to one involved in a business relationship with an NASD member that is related directly to investment or brokerage services." *Id*. An individual or entity that solely receives financial advice, without investment or brokerage services, is excluded from the definition of "customer." *Id*. at 773. In this case, Defendants never had *any* customer relationship with Jefferies.

Finally, the Ninth Circuit, relying on precedents from the Second and Fourth Circuits, concluded that a "customer" is "a non-broker and non-dealer who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). The definition is likewise unhelpful to Defendants because they do not allege that they purchased anything from Jefferies.

At least two District Courts in the Fifth Circuit have considered the issue.[3] In *Credit Suisse Sec. (USA) LLC v. Sims*, No. H–13–1260, 2013 WL 5530827 (S.D. Tex. Oct. 4, 2013), the District Court enjoined an individual from pursuing a FINRA arbitration because she had no contract or relationship with the two FINRA member firms named in the arbitration. *Id*. at *3. The defendant in *Sims* purchased a security in the secondary

---

[3] The Fifth Circuit has yet to weigh in on the definition of "customer" under the FINRA Code.

8

market through a third party broker-dealer, but had commenced the arbitration against two financial service firms with whom she had no prior dealings. *Id*. Another District Court held that the term "customer" under the FINRA Code "appears to require a direct relationship, contractual or otherwise." *Pershing LLC v. Bevis*, No. 13–672–JJB–RLB, 2014 WL 1818098, at *2 (M.D. La. May 7, 2014), *aff'd sub nom. Pershing, L.L.C. v. Bevis*, 606 F. App'x 754 (5th Cir. 2015). In that case, the court enjoined a pending FINRA arbitration because of the absence of any "direct customer relationship" as required by Rule 12200. *Id*. at *2–3.

      Here, under any of the Circuit's "customer" definitions above, Defendants' claims are clearly not arbitrable. The extent of Defendants' alleged "connection" to Jefferies is their reliance on a private placement memorandum which WFG allegedly misappropriated and revised for their presentations to Defendants. If this were sufficient to form a "customer" relationship, Jefferies would be subject to arbitration with any claimant who has ever done business with any FINRA Member. This absurdity is plainly at odds with the "reasonable expectations" of FINRA members. *See Abbar*, 761 F.3d at 274. Rule 12200 is not a mechanism that can be utilized to arbitrate with any aggrieved investor who can posit an attenuated connection to a member firm. Rather, to invoke the FINRA dispute resolution process against Jefferies in the absence of an arbitration agreement, Defendants must demonstrate that they are or were Jefferies' "customer[s]" under the FINRA Rules. For all the reasons stated above, they cannot. Accordingly, Jefferies is likely to prevail on the merits.

      **2. Jefferies Will Suffer Irreparable Harm if Defendants Are Not Enjoined.**

      Jefferies will suffer irreparable harm if Defendants are not enjoined from pursuing their claims against Jefferies in the Arbitration. Courts have consistently held that a party

9

suffers irreparable harm when it is forced to expend time and resources defending an arbitration to which it never consented. *See Sims*, 2013 WL 5530827, at *3 (citing cases); *see also Pershing LLC*, 2014 WL 1818098, at *4 (holding that a FINRA member would suffer irreparable harm if it were forced to arbitrate a non-customer's claims that were not subject to an arbitration agreement). Indeed, some courts have held that "the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is ***per se*** irreparable because it forces an individual to expend resources it cannot later recover." *See Morgan Keegan & Co. v. Louise Silverman Trust*, No. JFM–11–2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012), *aff'd sub nom. Morgan Keegan & Co. v. Silverman*, 706 F.3d 562 (4th Cir. 2013) (citing cases) (emphasis added). The fact that Jefferies "might [be] able to collaterally challenge an award resolving non-arbitrable claims does not remedy the harm caused by requiring it to arbitrate claims" they did not consent to arbitrate. *Kellogg Brown & Root Servs., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, No. H-07-2684, 2007 WL 4190795, at *16 (S.D. Tex. Nov. 21, 2007).

In sum, Jefferies would suffer irreparable injury without adequate remedy at law if it is compelled to arbitrate Defendants' claims when it never agreed to do so.

### 3. The Balance of Equities Weighs in Favor of Jefferies.

The balance of equities weighs decidedly in Jefferies' favor. In analyzing this factor, courts consider "whether the injury threatened to the party seeking the injunction outweighs the threatened harm to the parties whose actions will be enjoined." *Koman v. Weingarten/Investments, Inc.*, No. H–10–1836, 2010 WL 3717312, at *10 (S.D. Tex. Sept. 17, 2010).

Here, the harm facing Jefferies is immediate and substantial. If a preliminary injunction does not issue, "[Jefferies] will be forced to arbitrate disputed claims that it did not agree to resolve through binding arbitration." *Kellogg Brown*, 2007 WL 4190795, at

10

*16. As outlined above, without the protection of an injunction Jefferies "would be forced to spend substantial time and resources defending the [defendants'] claims before FINRA." *Morgan Keegan & Co. v. Shorthouse*, No. C11–5734BHS, 2011 WL 7790893, at *4 (W.D. Wash. Nov. 22, 2011). As the Eighth Circuit Court of Appeals has observed, courts "uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award." *McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997).

By contrast, the issuance of a preliminary injunction threatens no actual harm to Defendants. Even if they could somehow prevail on the ultimate merits in this action, Defendants would suffer at most, "only a short delay in the pending arbitration" as a result of a preliminary injunction. *See Greerwalker, LLP v. Jackson*, No. 3:16-CV-235, 2016 WL 3770954, at *5 (W.D.N.C. July 14, 2016). Moreover, proceeding in the Arbitration against Jefferies would "in no way" benefit Defendants, as any favorable award "would ultimately have to be set aside by the Court." *Charles Schwab & Co. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370, at *8 (D. Ariz. Feb. 4, 2010) (granting preliminary injunction restraining FINRA arbitration commenced by non-customer); *see also Zarecor v. Morgan Keegan & Co.*, No. 4:10CV01643 SWW, 2011 WL 5592861 (E.D. Ark., July 29, 2011) (vacating a FINRA arbitration award on the grounds that the claimant was not a "customer"). Indeed, a FINRA arbitration brought by a non-customer against a member firm is a "futile exercise" precisely because it would lead only to "further proceedings in this Court" which Defendants could not conceivably benefit from, as their "award, if any, is so likely to be vacated." *Morgan Keegan & Co. v. McPoland*, 829 F.

11

Supp. 2d 1031, 1036 (W.D. Wash. 2011).  As against Jefferies' clear and pressing interest in a preliminary injunction, Defendants have no countervailing interest in pursuing the Arbitration against Jefferies.

To summarize: "[i]n light of [Jefferies'] showing of substantial likelihood of success that [it] cannot be forced to arbitrate the underlying dispute and the irreparable injury that flows from that forced arbitration, the harm to [Jefferies] clearly outweighs the harm to [Defendants]." *Morgan Keegan & Co. v. Shadburn*, 829 F. Supp.2d 1141, 1553 (M.D. Ala. 2011).

### 4. An Injunction Is in the Public Interest.

The public interest is served by enjoining arbitration where the parties have no agreement to arbitrate:

> ***Where a party has not agreed to submit a dispute to arbitration, the public has an interest in ensuring that the arbitration does not proceed***.  To force a party to arbitrate a dispute absent an agreement to do so would undermine the longstanding principle that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of disputes. Moreover, compelling arbitration when parties have not agreed to do so would discourage entities from agreeing to arbitrate at all out of fear that such agreements would be stretched too far in the course of judicial construction. This in itself would undermine the federal policy favoring arbitration.

*Sims*, 2013 WL 5530827, at *4 (citations and internal quotation marks omitted) (emphasis added); *see also Sykes v. Escueta*, No. 10–3858 SC, 2010 WL 4942608, at *5 (N.D. Cal. Nov. 29, 2010) ("The Court agrees that the public interest is not served by compelling parties to arbitrate claims when there is no arbitration agreement between the parties.").

As detailed in this Motion, Jefferies never agreed to arbitrate any claims with Defendants, who also lack any contractual basis to pursue the Arbitration against Jefferies.

12

Accordingly, the public interest would be served by the issuance of an injunction preliminarily enjoining Defendants from pursuing their claims against Jefferies in the pending Arbitration.

### III. CONCLUSION

For the foregoing reasons, Jefferies respectfully asks that the Court grant its Motion and issue a preliminary injunction enjoining Defendants from pursuing the Arbitration against Jefferies.

|  |  |
|---|---|
| Dated: February 3, 2017 | Respectfully submitted, |
|  | William R. Thompson, II<br>TX State Bar No. 00788537<br>Hankinson LLP<br>750 North St. Paul Street<br>Suite 1800<br>Dallas, Texas 75201<br>Telephone: (214) 754 9190<br>Facsimile: (214) 754-9140<br>rhompson@hankinsonlaw.com |
|  | /s/ Scott S. Balber |
|  | Scott S. Balber<br>Jonathan Cross<br>Herbert Smith Freehills New York LLP<br>*Pro Hac Vice* Applications Forthcoming<br>450 Lexington Ave.<br>14th Floor<br>New York, New York 10017<br>Telephone: (212) 519-9858<br>Facsimile: (212) 519-9856<br>Scott.Balber@hsf.com<br>Jonathan.Cross@hsf.com |
|  | *Attorneys for Plaintiff Jefferies LLC* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 3, 2017, a true and correct copy of the foregoing document and related attachments have been served on Plaintiff's counsel of record electronically:

Arnold Shokouhi
Justin N. Bryan
McCathern, PLLC
Regency Plaza
3710 Rawlins, Suite 1600
Dallas, Texas 75219
arnolds@mccathernlaw.com
jbryan@mccathernlaw.com

/s/ William R. Thompson, II
William R. Thompson, II